IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DAVID LOPEZ-ROMERO,

    Petitioner,

v.

TODD M. LYONS, Acting Director, Immigration and Customs Enforcement; MARY DE ANDA YBARRA, Director, El Paso Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security; and PAMELA JO BONDI, Attorney General of the United States, in their official capacities,

    Respondents.

2:25-cv-01113-MIS-JHR

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on the Petition for Writ of Habeas Corpus filed by Petitioner David Lopez-Romero on November 7, 2025 ("Petition"). ECF No. 1. Respondents filed a Response to the Petition on November 26, 2025 ("Response to the Petition"), ECF No. 7, to which Petitioner filed a Reply on December 5, 2025 ("Reply in Support of the Petition"), ECF No. 9. Also before the Court is Petitioner's Motion to Grant the Petition Forthwith Under 28 U.S.C. § 2243, filed December 8, 2025 ("Motion"). ECF No. 10. Respondents filed a Response on December 10, 2025 ("Response to the Motion"), ECF No. 11, to which Petitioner filed a Reply on December 16, 2025 ("Reply in support of the Motion"), ECF No. 12. On November 13, 2025, the Court issued an Order referring this matter to a United States Magistrate Judge "to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case." ECF No. 5 at 1 ("Order of

Reference"). The Court hereby **VACATES** the Order of Reference and, upon review of the Parties' submissions, the record, and the relevant law, the Court will **GRANT** the Petition for Writ of Habeas Corpus.

**I.     Background**

The material facts of this case are undisputed. See Mot. at 1; Resp. to Mot. at 1. Petitioner is a 42-year-old citizen of Guatemala who entered the United States without admittance or parole at the age of 17 in May 2001. Pet. ¶ 20. He has not left the United States since his entry as a minor in 2001. Id. He has three children who are United States citizens, ages 17, 14, and 6, who he lives with and cares for. Id. ¶¶ 1, 15. He has filed with the Executive Office for Immigration Review an Application for Cancellation of Removal as a non-lawful permanent resident. Id. ¶ 1.

On October 13, 2025, the U.S. Department of Homeland Security ("DHS") apprehended Petitioner during a routine traffic stop while on his way to work in the State of Maryland. Id. ¶¶ 2, 24. DHS issued a Notice to Appear, charging him as inadmissible under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without admission or parole, and inadmissible under section 212(a)(7)(A)(i)(I) of the INA, as amended, 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who, at the time of application for admission, was not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity, and nationality as required under the regulation issued by the Attorney General under section 211(a) of the Act. Id. ¶¶ 2, 25. Petitioner has not been convicted of any offense under section 212(a)(2), 237(a)(2), or 237(a)(3) of the INA. Id. ¶ 15. Indeed, he has no criminal record. Id. ¶ 87.

Petitioner is in removal proceedings under 8 U.S.C. § 1229a, id. ¶ 65; Resp. to Pet. at 10, and has been detained at the Otero County Processing Center in Chaparral, New Mexico since October 21, 2025, Pet. ¶ 27. On October 31, 2025, an Immigration Judge denied Petitioner's request for a bond hearing, finding he lacked jurisdiction to consider the bond request based on the Board of Immigration Appeals' ("BIA") decision in Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025). Id. ¶ 29; see also Order of the Immigration Judge at 1, ECF No. 1-3.

On November 7, 2025, Petitioner filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. ECF No. 1. Count One of the Petition alleges that the BIA's decision in Matter of Yajure Hurtado violates the INA. ECF No. 1 ¶¶ 48-79. Count Two alleges that Petitioner's prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Id. ¶¶ 80-93.

**II.     Legal Standard**

"The habeas statute provides that a federal district court may entertain a habeas application by a person held 'in custody under or by color of the authority of the United States,' or 'in custody in violation of the Constitution or laws or treaties of the United States.'" Munaf v. Geren, 553 U.S. 674, 685 (2008) (quoting 28 U.S.C. §§ 2241(c)(1), (3)). "An individual is held 'in custody' by the United States when the United States official charged with his detention has 'the power to produce' him." Id. at 686 (quoting Wales v. Whitney, 114 U.S. 564, 574 (1885)).

"District courts are limited to granting habeas relief 'within their respective jurisdictions.'" Rumsfeld v. Padilla, 542 U.S. 426, 442 (2004) (quoting 28 U.S.C. § 2241(a)). This language requires "nothing more than that the court issuing the writ have jurisdiction over the custodian." Id. (quoting Braden v. 30th Jud. Cir. Ct. of Ky., 410 U.S. 484, 495 (1973)).

### III. Discussion

As an initial matter, the Court's jurisdiction over the Petition and Respondents is uncontested, and the Court finds that it has jurisdiction over this matter.

On the merits, Petitioner argues that because he has been continuously within the United States for more than 20 years and was apprehended within the United States, he is not subject to mandatory detention under the INA while in removal proceedings. Pet. ¶¶ 32-79. Specifically, he argues that he is entitled to a bond hearing under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). See id. He further argues that his continued detention violates the Fifth Amendment because he has no criminal record, poses no danger to the community, and has substantial ties to the United States such that he is not a flight risk. Id. ¶¶ 80-93.

Respondents argue that Petitioner is an "an alien present in the United States who has not been admitted" and is therefore "an applicant for admission" who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Resp. to Pet. at 2-21. They further argue that Petitioner's detention and removal proceedings do not violate the Fifth Amendment's Due Process Clause. Id. at 22-24.

In his Reply in support of the Petition, Petitioner argues that Respondents' "unprecedented expansion of 8 U.S.C. § 1225(b)(2)(A) to reclassify long-present noncitizens arrested in the interior as 'applicants for admission' subject to mandatory, no-bond detention" has been rejected by a final declaratory judgment in a nationwide class action before the United States District Court for the Central District of California, Bautista v. Department of Homeland Security, et al., Case No. 5:25-cv-07873-SSS-BFM, __ F. Supp. 3d __, 2025 WL 3713987 (C.D. Cal. Nov. 20, 2025). ECF No. 9 at 1-2. Petitioner maintains that because he was not apprehended on arrival to the

United States, but rather was detained within the United States after being continuously present within the country for more than twenty years, he is entitled to a bond hearing under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A). Id. at 5-6 (citations omitted).

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306, (1993); see also Trump v. J.G.G., 604 U.S. 670, 673 (2025); Zadvydas, 533 U.S. at 693.

What due process Petitioner is owed depends on his classification under the provisions of the INA. The two statutes relevant to this determination in this case are 8 U.S.C. §§ 1225(b) and 1226(a). In Jennings v. Rodriguez, the Supreme Court explained that "§ 1225(b) applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." 583 U.S. 281, 297 (2018). On the other hand, "§ 1226 applies to aliens already present in the United States." Id. at 303. United States District Judge Matthew Garcia summarized the statutory scheme as follows:

**1. Section 1225(b)**

Section 1225(b) "applies primarily to [noncitizens] seeking entry into the United States," i.e., "applicants for admission."[1] Jennings, 583 U.S. at 297. It requires, inter alia, that all applicants for admission be inspected by an immigration officer. § 1225(a)(3). During that process, the immigration officer must determine whether

---

[1] Section 1225(a)(1) defines an "applicant for admission" as a noncitizen "present in the United States who has not been admitted or who arrives in the United States . . . ." All applicants for admission must be inspected by an immigration officer. § 1225(a)(3).

an applicant is covered by either §§ 1225(b)(1) or 1225(b)(2). See Jennings, 583 U.S. at 287. Noncitizens who are arriving in the United States and initially deemed inadmissible under §§ 1182(a)(6)(C) or (a)(7) due to fraud, misrepresentation, or lack of valid documentation are treated in accordance with § 1225(b)(1)(A)(i). Other noncitizens may also fall within the statute's purview as designated by the Attorney General if they have not been admitted or paroled and were not continuously present in the United States for the two-year period prior to that determination. See § 1225(b)(1)(A)(iii). Section 1225(b)(1)(A)(ii) also addresses the situation where, during the inspection process, the noncitizen indicates either a fear of persecution or an intent to apply for asylum. If the immigration officer deems that claim credible, then the noncitizen must be "detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). The relevant regulations regarding positive credible-fear determinations control the process thereafter. 8 C.F.R. § 208.30(f).

Section 1225(b)(2) of Title 8 of the United States Code addresses those persons who are seeking admission into the country but whom are not otherwise covered by § 1225(b)(1). It requires that the noncitizen be detained provided "the examining immigration officer determines that a [noncitizen] seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ." § 1225(b)(2)(A). Noncitizens covered by § 1225(b)(2) are not subject to the expedited removal process outlined in § 1225(b)(1). They receive some process, including an evidentiary hearing before an IJ, the right to counsel, and the right to seek review by the BIA and a federal court of appeals. § 1225(b)(2)(A); § 1229a; Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020).

**2. Section 1226**

Section 1226 is a separate statute addressing circumstances not covered by § 1225. It sets "the default rule" for detaining noncitizens "already present in the United States." Jennings, 538 U.S. at 303. Per § 1226(a), a noncitizen "may be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the United States." (emphasis added). Custody is not predetermined. Noncitizens detained pursuant to § 1226(a) are entitled to individualized bond hearings as described by federal regulation. See Jennings, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). During those proceedings, an IJ is tasked with determining whether the noncitizen is either a flight risk or a danger to the community. Id. at 303. If either question is resolved in the affirmative, then the noncitizen will be detained. See Rodriguez, 779 F. Supp. 3d at 1262 (citing Rodriguez Diaz v. Garland, 53 F.4th 1189, 1197 (9th Cir. 2022) for the proposition that "an IJ will order a detainee released on bond if the person is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk'"). Otherwise, bond and conditions of release are appropriate. Id. There are some instances in which custody is required—including those outlined in Section 1226(c). But, generally speaking, those provisions apply to circumstances

in which a noncitizen has "committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities." Gomes v. Hyde, No. 1:25-cv-11571-JEK, 2025 WL 1869299, at *3 (D. Mass. July 7, 2025) (citing §§ 1226(c)(1)(A)-(D)).

Gonzalez Ramos v. Dedos, No. 1:25-cv-00975-MLG-KRS, 2025 WL 3653928, at *2-3 (D.N.M. Dec. 17, 2025).

Here, the Court finds that Section 1226(a) governs Petitioner's detention because he is an alien already present in the United States, not an "applicant for admission" or "alien seeking admission" under Section 1225(b)(2)(A). See id. at *3. "Noncitizens, like [Petitioner], 'who reside in the country for decades are not 'seeking admission.' They are 'no longer seeking to enter the United States (lawfully or otherwise)'—they are already here." Id. (quoting Cortez-Gonzalez v. Noem, __ F. Supp. 3d __, 2025 WL 3485771, at *4 (D.N.M. Dec. 4, 2025)); see also Pu Sacvin v. De Anda-Ybarra, No. 2:25-cv-01031-KG-JFR, 2025 WL 3187432, at *3 (D.N.M. Nov. 14, 2025) ("Noncitizens 'seeking admission' are those who have not 'effected an entry' into the United States. Noncitizens who entered the country years earlier are not considered to be 'seeking admission,' and therefore fall under § 1226 rather than § 1225(b)(2)(A).") (citation omitted). "Only a '[noncitizen] seeking admission' falls within § 1225(b)(2)(A)'s mandatory detention scheme. To conclude that all 'applicants for admission' are continuously 'seeking admission' for as long as they live in the United States 'goes against the plain, ordinary meaning of the words 'seeking' and 'admission.'" Gonzalez Ramos, 2025 WL 3653928, at *3 (quoting Romero v. Hyde, 795 F. Supp. 3d 271. 284 (D. Mass. 2025)).

Additionally, Respondents' interpretation of Section 1225(b)(2) "would render the Laken Riley Act ('LRA') as mere surplusage." Id. The LRA "added additional criminal convictions triggering § 1226's custodial provisions." Id. (citing Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025)

7

(codified as amended at 8 U.S.C. § 1226(c)(1)(E))). "So, '[i]f § 1225(b)(2) already mandated detention of any [noncitizen] who has not been admitted, regardless of how long they have been here, then adding § 1226(c)(1)(E) to the statutory scheme was pointless.'" Id. (quoting Maldonado v. Olson, 795 F. Supp. 3d 1134, 1152 (D. Minn. 2025)); see also Loa Caballero v. Baltazar, Case No. 25-cv-03120-NYW, 2025 WL 2977650, at *7 (D. Colo. Oct. 22, 2025) ("[I]f, as the Government argue[s] . . . , a non-citizen's inadmissibility were alone already sufficient to mandate detention under section 1225(b)(2)(A), then the 2025 amendment would have no effect." (quoting Martinez v. Hyde, 792 F. Supp. 3d 211, 221 (D. Mass. 2025)). "The Court doubts that Congress intended such a result." Gonzalez Ramos, 2025 WL 3653928, at *3 (citing Chevron Mining Inc. v. United States, 863 F.3d 1261, 1283 n.15 (10th Cir. 2017) ("The canon against surplusage indicates that [courts] generally must give effect to all statutory provisions, so that no part will be inoperative or superfluous—each phrase must have distinct meaning.")).

Finally, the Court's interpretation is consistent with the Supreme Court's decision in Jennings, 583 U.S. at 289.

> There, the Supreme Court instructed that "U.S. immigration law authorizes the Government to detain certain [noncitizens] seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain [noncitizens] already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." Id. (emphases added). This interpretation of §§ 1225(b) and 1226(a) is consistent with the due process afforded to noncitizens who have entered the United States. "The distinction between a [noncitizen] who has effected an entry into the United States and one who has never entered runs throughout immigration law." Zadvydas, 533 U.S. at 693. Once a noncitizen effects entry into the United States, the Due Process Clause applies "whether [the noncitizen's] presence here is lawful, unlawful, temporary, or permanent." Id. Noncitizens who have not yet effected entry are not afforded the same due process rights. See Thuraissigiam, 591 U.S. at 103; see also Cortez-Gonzalez, 2025 WL 3485771, at *4 n.10 (discussing distinction between merely "set[ting] foot on U.S. soil" and when citizens have effected an entry (quoting Thuraissigiam, 591 U.S. at 139-40). With this distinction in mind, it is unlikely that Congress intended the mandatory detention of § 1225(b)(2)(A) to apply to noncitizens already present in the United

8

States. See Martinez, 792 F. Supp. 3d at 222; see also Cortez-Gonzalez[,] 2025 WL 3485771, at *5 (discussing DHS' previous decades-long application of § 1226 to noncitizens residing in the United States without admission).

Gonzalez Ramos, 2025 WL 3653928, at *4. Indeed, as previously noted, the Supreme Court in Jennings explicitly stated that "§ 1225(b) applies primarily to aliens seeking entry into the United States[,]" 583 U.S. at 297, while "§ 1226 applies to aliens already present in the United States[,]" id. at 303.

For these reasons, the Court concludes that Petitioner's detention is governed by 8 U.S.C. § 1226(a). See id.; Cortez-Gonzalez, 2025 WL 3485771, at *6; Intriago-Sedgwick v. Noem, No. 1:25-cv-01065-MIS-LF, 2025 WL 3688155, at *7 (D.N.M. Dec. 19, 2025), report and recommendation adopted No. 1:25-cv-01065-MIS-LF, ECF No. 27 (D.N.M. Jan. 6, 2026); see also Melchor-Rios v. Ortiz, Case No. 2:25-cv-01055-WJ-GJF, 2025 WL 3764775, at *2 (D.N.M. Dec. 30, 2025) ("Whether the detention of individuals like Petitioner, who previously entered and currently reside in the United States, is governed by the discretionary detention provisions of § 1226(a) or the mandatory detention provisions of § 1225(b), is a question that has been answered in near-unison by district courts nationwide: § 1226(a) governs.") (collecting cases).[2]

Because § 1226(a) is controlling, Petitioner is entitled to an individualized bond hearing as a matter of right. Cortez-Gonzalez, 2025 WL 3485771, at *5. "Petitioner's continued detention without such review constitutes an ongoing violation of [his] right to due process." Id.; see also

---

[2] Although Respondents do not cite Matter of Yajure Hurtado in support of their position, see Resp. to Pet., ECF No. 7; Resp. to Mot., ECF No. 11, the Court finds that the BIA's decision in Hurtado is unpersuasive, contrary to law, and entitled to no deference. See, e.g., Patel v. Crowley, No. 25 C 11180, 2025 WL 2996787, at *6 (N.D. Ill. Oct. 24, 2025) (explaining that Hurtado is unpersuasive and entitled to "little deference" because it contradicts prior BIA decisions and "conflicts with the implementing regulation for § 1225(b)" (quoting, Ortiz Donis v. Chestnut, No. 1:25-cv-01228 JLT SAB, 2025 WL 2879514, at *8 (E.D. Cal. Oct. 9, 2025))).

Velasquez Salazar v. Dedos, __ F. Supp. 3d __, 2025 WL 2676729, at *5 (D.N.M. Sep. 17, 2025). As such, he is entitled to habeas corpus relief. See Velasquez Salazar, 2025 WL 2676729, at *9.

Petitioner requests "a bond hearing before an Immigration Judge within 7 days, at which hearing the Immigration Judge shall: (a) place the burden on the government to demonstrate by clear and convincing evidence that Petitioner poses a flight risk or danger to the community; and (b) set bond at an amount that Petitioner can reasonably afford if the government fails to meet its burden[.]" Pet. at 22. To determine whether this is an appropriate remedy, the Court considers the factors set forth in Mathews v. Eldridge:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). Upon consideration of these factors, the Court finds that the requested relief is appropriate.

First, it is beyond dispute that Petitioner has a "strong private interest in being free from civil detention." Velasquez Salazar, 2025 WL 2676729, at *6 (quoting L.G. v. Choate, 744 F. Supp. 3d 1172, 1182 (D. Colo. 2024)). As previously mentioned, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. And Petitioner's interest in freedom is particularly weighty because he has no criminal record and has spent the last twenty-four-and-a-half years out of custody. Pet. ¶¶ 1, 15, 87. During that time, he has maintained stable employment, paid federal income taxes, and become a parent to three children—ages 17, 14, and

10

6—all of whom are United States citizens and live with Petitioner. Pet. ¶¶ 1, 15, 28. This factor weighs in favor of the requested relief.

Second, the Court finds that "the risk of an erroneous deprivation of this interest is reduced by shifting the burden of proof to the Government, given the difficulty of proving a negative (that a noncitizen is <u>not</u> a flight risk or danger to the community) compared to the resources available to the Government to gather information." <u>Velasquez Salazar</u>, 2025 WL 2676729, at *6 (citing <u>L.G.</u>, 744 F. Supp. 3d at 1183-84). The Court finds that shifting the burden in this case as an additional procedural safeguard is especially appropriate because Respondents have offered no evidence or argument that Petitioner is a flight risk or danger to the community; given that the Government has no reason to believe that Petitioner is either a flight risk or danger to the community, it would be ridiculous to require Petitioner to prove that he is neither in order to regain his freedom. This factor also weighs in favor of the requested remedy.

Finally, the Court finds that shifting the burden of proof to the Government is minimal compared to the weighty liberty interests at stake for Petitioner, and is not fiscally or administratively unreasonable. "Faced with a choice 'between [minimally costly procedures] and preventable human suffering,' as discussed above, the Court concludes 'that the balance of hardships tips decidedly in [petitioner's] favor.'" <u>Singh v. Andrews</u>, __ F. Supp. 3d. __, 2025 WL 1918679, at *9 (E.D. Cal. July 11, 2025) (alterations in original) (quoting <u>Hernandez v. Sessions</u>, 872 F.3d 976, 996 (9th Cir. 2017)).

Therefore, to protect Petitioner's right to due process, the Court orders an individualized bond hearing before a neutral Immigration Judge to determine Petitioner's custody status pursuant to 8 U.S.C. § 1226(a) within seven days of the date of this Order, at which the Government must prove by clear and convincing evidence that Petitioner poses a flight risk or danger to the

11

community. If the Government fails to meet its burden, bond shall be set at an amount Petitioner can reasonably afford. If no bond hearing is held within seven days, Petitioner must be immediately released from custody unless and until it is determined that continued detention is warranted pursuant to Section 1226(a). Melchor-Rios, 2025 WL 3764775, at *3; Velasquez Salazar, 2025 WL 2676729, at *9.

IV. **Conclusion**

Accordingly, it is **HEREBY ORDERED** that:

1. The Order of Reference, ECF No. 5, is **VACATED**;

2. Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **GRANTED**;

3. Respondents are **ORDERED** to provide Petitioner with an individualized bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a) within <u>seven days</u> of the date of this Order, at which the Government must prove by clear and convincing evidence that Petitioner poses a flight risk or danger to the community. If the Government fails to meet its burden, bond shall be set at an amount Petitioner can reasonably afford;

4. If Petitioner has not received a bond hearing by 3:00 pm on January 20, 2025, he shall be immediately released and shall not be re-detained without a pre-deprivation bond hearing before a neutral Immigration Judge pursuant to 8 U.S.C. § 1226(a), at which the Government must prove by clear and convincing evidence that Petitioner is a danger or flight risk;

5. The Government shall file a status report within ten days of the date of this Order to certify compliance. The status report shall include if and when the bond hearing

occurred, if bond was granted or denied, and if bond was denied, the reasons for the denial;

6. The Court will separately enter Final Judgment in favor of Petitioner but retain jurisdiction over this matter; and

7. Petitioner's Motion to Grant the Petition Forthwith Under 28 U.S.C. § 2243, ECF No. 10, is **DENIED AS MOOT**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE